## Case No. 8,970.

MAHOON et al v. The GLOCESTER.

[Bee, 395; [1] 2 Pet. Adm. 403.]

Admiralty Court, Pennsylvania. 1780.

PRIZE—SEAMEN'S SHARES—HOW FOUNDED—VOYAGE BEGUN—PUT ON SHORE.

1. Admiralty has jurisdiction in cases of claims made by seamen to shares of prizes.

2. The right of a seaman to wages is not founded in the articles, but in the service.

[Cited in Worth v. The Lioness No. 2, 3 Fed. 925.]

3. The captain of a vessel, without giving any reason for his conduct, forces some of his crew on shore after a voyage is begun. They shall be entitled to share in the prizes taken.

[Cited in Emerson v. Howland, Case No. 4,-441; Pratt v. Thomas, Id. 11,377.]

The brig Glocester had been captured by Roger Kean in the privateer Holker, and condemned as prize to the captors. The marshal being about to make distribution of the booty amongst the crew, according to

[1] [Reported by Hon. Thomas Bee, District Judge.]

the list handed in by Captain Kean, was notified to stay in his hands twenty-five shares of the said prize, claimed by Patrick Mahoon, and others, as being a part of the crew belonging to, and concerned in the said privateer Holker. Notwithstanding that their names were not to be found in the captain's return; the libel, now before the court, is for these twenty-five shares.

HOPKINSON, District Judge. The circumstances of this case appear, by the testimony exhibited, to be as follows: The printed articles of the privateer Holker were set up at a common house of rendezvous for the enlistment of privateer's men, according to custom. The libellants, in common with many others, signed these articles, and made the necessary preparations for the cruize. When the Holker was ready to sail, the libellants, with the rest of the crew, repaired on board by order of the captain, and the vessel set sail. When they arrived at Chester on the Delaware (fifteen miles below Philadelphia) Captain Kean mustered his crew upon deck, called over their names as subscribed to the articles, and then, without giving any reason for his conduct, selected Patrick Mahoon and twenty-four others, and ordered them on shore; refusing to let them proceed on the cruize, and when they earnestly solicited to be continued on board he forcibly drove them away, and the captain proceeded on his voyage, leaving the libellants behind. A few days after Kean again called his crew together and produced to them another printed copy of articles, which he urged them to sign. Some objected, observing that they had already signed, and did not understand signing two sets of articles for the same cruize; but the captain enforced them with threats and even blows, to sign the new articles; declaring at the same time, that his view was to exclude those men whom he had left behind from having any share of the prizes they might take. The brig Glocester was captured during this cruize.

The respondents have rested their cause principally on a plea to the jurisdiction of this court; alleging that the injury, if any, was exclusively of common law cognizance; because the libellants' claim was founded in articles executed on shore, within the body of a county: that although the admiralty could determine the question of prize or no prize; yet it could not determine to whose use, having no jurisdiction in disputes between owner and owner. owner and captain, or captain and mariner, except only in the case of a mariner's wages, which is allowed out of special favour, and not of right, further than as communis error facit jus.

The facts being fully ascertained, and not controverted, no difficulty arises from that quarter. It is in proof that Captain Kean forced the libellants on shore after the voyage was begun, and compelled the remain-

der of the crew to sign the new articles, with a view to exclude the libellants from any advantage they might claim under the former; and it is contended that this court cannot redress the injury, because the suit respects damages, which the common law alone can ascertain. The truth, however, is, that the parties do not sue for redress of an injury; but for their shares of a prize legally condemned to the use of the owners, officers, and crew, and of all persons belonging to, or concerned in the privateer Holker: of which crew, they say, they are a part. The articles of enlistment, executed on shore, is no bar to the jurisdiction of the admiralty. Mariners are generally engaged on shore, and always sue for their wages in this court. In the one case the mariners are paid by monthly wages, or by the run, in the other by a share of the booty taken. There is the same reason in both cases. But I am of opinion that the articles are not the true foundation of a seaman's claim. If one or more mariners should enter on board a vessel, with the knowledge and consent of the master, should receive his orders and perform the duties of the station, they would be entitled to customary wages, or a proportion of the booty taken in common with the rest of the crew, although they had signed no articles at all: the right is not founded in the articles, but in the service.

It has been said, that this court can only determine the question prize or no prize, but cannot adjudge to whose use. Broom's Case, Carth. 399; Id. 475,—is express in point to the contrary. The admiralty not only decreed lawful prize, but also to whose use, viz. to the king's; and Broom having converted the property to his own use, was sued in the admiralty by the king's proctor for the value. Broom applied for a prohibition, which was denied; because the court of admiralty, having determined the property to be prize to the king, this second suit was deemed to be only a continuation of the original process. Moreover, it cannot be supposed but that during the many maritime wars in which England hath been engaged, contests about the rights of seamen to shares of prizes must have frequently occurred. If then such claims were only triable at common law, they would doubtless appear in some of the books of reports. But no actions of this kind can be found in those books, nor even prohibitions prayed for in such cases. The inference is, that such suits were allowed to be exclusively of admiralty jurisdiction. If Captain Kean had any reasonable objections against the libellants, he should have made those objections before he received them on board, or at least before the vessel had weighed anchor and commenced her voyage. As the libellants were in fact forced from the service, I do not see why this wrong, on the part of the captain, should deprive them of the right they had obtained in this cruize by the enlistment,

and by the captain's confirmation of that enlistment when he received them into his service.

I adjudge that the libellants have and receive their respective shares of the prize brig Glocester, and her cargo, in common with the rest of the Holker's crew.

The respondents appealed from this decree; but the court of appeals confirmed the sentence. [See Case No. 7,632.]