## Case No. 11,754.

RICE et al. v. The POLLY & KITTY.

[2 Pet. Adm. 420.] [1]

District Court, D. Pennsylvania. 1789.

SEAMEN — CRUELTY OF MASTER — LEAVING SHIP — WAGES — CHASTISEMENT.

1. The libellants, seamen of the Polly and Kitty, were obliged to leave her during her voyage, in consequence of the cruelty of the master and mate. They returned to Philadelphia and claimed wages until they left the vessel. The court decreed payment to them. No demand was made for wages for the whole voyage.

[Cited in Emerson v. Howland, Case No. 4,-441; The America, Id. 286. Quoted in Magee v. The Moss, Id. 8.944. Cited in Worth v. The Lioness No. 2, 3 Fed. 925; The Noddleburn, 28 Fed. 857.]

2. Master may inflict moderate chastisement on seamen.

[Cited in Sheridan v. Furbur, Case No. 12,-761; Gould v. Christianson, Id. 5,636.]

[This was a libel for wages by Rice and others against the Polly and Kitty (James Eggleston, master).]

BY THE COURT. The libellants had been cruelly beaten and abused both by the captain and one Shirtliff, the mate, during the voyage, particularly in the port of Lisbon, insomuch that on account of extreme illusage and dangerous threats, they were obliged to leave the brig at Lisbon in the midst of her voyage, and return to Philadelphia in another vessel; and the principal question was, whether this deser-

---

[1] [Reported by Richard Peters, Jr., Esq.]

tion did not incur a forfeiture of wages under the articles.

In giving judgment, after summing up the testimony, it was said:

When mariners enter into articles for a voyage, they do not thereby put themselves out of the protection of the laws, or subject their limbs and lives to the capricious passions of a master or his mate. On account of the great charge entrusted to the master, and for the benefit of commerce, the law holds his office in high estimation, and vests him with a great extent of discretionary power. It gives him absolute command over the seamen in all matters concerning their duty and the object of their service, but not an absolute command over their persons. The master has a right to correct a refractory, disobedient mariner; but wherever this right is recognized in the books, moderate chastisement is always exprest or intended. For the law always watches the exercise of discretionary power with a jealous eye. The relation between a master and his servant or apprentice is such, that of necessity a discretionary authority is allowed by law to the master, yet nothing is more frequent than the intervention of the civil power to dissolve this connection, when the master is found to abuse his authority by undue severity and cruelty. Under such circumstances, the servant is justified in leaving his master. Keeping a servant from meat and drink, or battery, are good causes for a departure from the service. Fitzh. Nat. Brev. 391; 1 Bl. Comm. 428. The shipping articles, indeed, declare that forty-eight hours absence from the vessel, during the voyage, without leave, shall be deemed a total desertion, and incur a forfeiture of wages. But I would observe here, as I did lately upon another occasion, that although the sole contract mentioned in these articles on the part of the master or owner, is the payment of wages, yet law and reason will imply other obligations—such as, that the vessel shall be sea-worthy and properly fitted for navigation—that the mariners shall be supplied with sufficient meat and drink, and that they shall be treated with, at least, decent humanity.

From a general review of the testimony, and indeed from the mate's own account, it is manifest that the libellants have been cruelly beaten and abused on board this brig at sundry times, and especially in the port of Lisbon, where the captain found it necessary to take one of them on shore and put him under the care of a surgeon to be cured of the wounds and bruises he had suffered under the chastisement given him by the captain and his mate. The only justifications alleged for this great severity, are a general charge against the mariners of disobedience and insufficiency in their duty, without specifying any particulars, and an appearance of a mutinous combination between them in the port of Lisbon. I have carefully considered the testimony with regard to this last suggestion, but cannot find sufficient grounds to support the charge. The words "we shall see who will be master of this brig," seem to have a natural reference to the request the mariners had just before made to him to be master of his own vessel, and not to suffer the mate to tyrannize over them in the manner he had done. As to the assertion that Hughes attempted to strike the mate, and that Lamant actually did strike him, it is not supported by testimony sufficient to establish a charge so highly criminal. But what I principally look to, is the general conduct of the mariners on this occasion. Finding themselves so cruelly treated by the mate, they first made their complaint to the captain; instead of obtaining the redress they expected, the captain joined the mate in punishing them still more severely for making this complaint. This extreme severity, together with the declaration of the mate, that he would make them glad to jump overboard before they got to America, seems to have taken away all hope of redress or even safety on board, and the whole crew left the vessel. When on shore, they did not secrete themselves, but frequently sought for and met the captain, and openly demanded their wages and clothes; and finally, they applied to the legal authority at Lisbon, and obtained a process against the captain. This conduct on the part of the mariners, seems to remove every appearance of an intended mutiny or a voluntary desertion. If the suspicion of either had been well founded, why did not the captain apply to the courts of law at Lisbon, to have them secured and tried for their offences. This he did not do, but on the contrary, promised to pay them their wages, and anxiously avoided the process they had taken out against him.

It is not necessary to enquire what effect the captain's promise to pay the mariners their wages, after they had left the vessel might have, as a legal assumption, after the supposed forfeiture, because I find very sufficient grounds for determining the cause without it. The libellants have not voluntarily deserted, but have been forced from a service in which neither the rights of humanity nor personal safety could be depended upon or even expected.

I adjudge that the libellants have and receive their wages to the time of their leaving the vessel at Lisbon (for this is all the libellants ask for),[2] and that the respondent pay the costs of suit.

———

RICE (POSTMASTER GENERAL v.). See Case No. 11,312.

---

[2] The claims of seamen to wages, under circumstances similar to those mentioned in this case. for the whole voyage, have been frequently allowed in the district court by Judge Peters, and there are many cases in the English books, in which the principles on which such claims are founded, have been recognized.