## Case No. 11,377.

### PRATT v. THOMAS.

[1 Ware (427) 437.] [1]

District Court, D. Maine. Oct. 30, 1837.

PLEADING IN ADMIRALTY — OATH TO LIBEL —
WAGES—BALANCE DUE—PLENARY AND
SUMMARY CAUSES—JOINDER.

1. The oath of calumny anciently required of the libellant in the admiralty is not now in use. All that is required by the modern practice is a general verification of the cause of action by affidavit.

2. It is not necessary to annex to a libel for wages an account stating the rate of wages and the precise balance due. It is sufficient if the contract is stated and the service alleged in proper form.

3. If the libellant sets forth a particular balance as due, and it appears by the proofs that a larger sum is due, the court is not limited to the precise amount claimed in the libel.

[Cited in The Atlantic, Case No. 620.]

4. Under the prayer for further relief a larger sum may be decreed if justice requires it.

5. The distinction between plenary and summary causes has not been adopted in the practice of the admiralty in this country.

6. Of the joinder of actions. An action of damages as for assault and battery against the master, cannot be joined in the same libel with an action for wages, if it be excepted to.

[Cited in New Jersey Steam Nav. Co. v. Merchants' Bank of Boston, 6 How. (47 U. S.) 424. Approved in The Guiding Star, 1 Fed. 348.]

7. Quære, if not excepted to, whether the court may not adjudicate upon both in one libel, making in each case a separate decree.

This was a libel for subtraction of wages, and in a cause of damage for alleged personal wrongs and injuries. The libellant alleged in his libel, that he shipped on board the schooner David Pratt, of which the respondent was master, at Wilmington, in North Carolina, some time in May, 1837, for a voyage from that place to divers ports in the West Indies, and back to her port of discharge in the United States, for wages at the rate of fourteen dollars a month; that he faithfully served until the arrival of the vessel at North Yarmouth, where he was discharged on the 14th day of August; that five dollars was all the master paid him for the balance of wages, whereas there was in fact twenty-seven dollars unpaid and justly due. The libel states the day of his discharge, but does not state the day that his services commenced. In another article the libellant set forth several personal injuries, done to him by the master, while he was in the service of the vessel, and concludes with a prayer that process may issue according to the course of the court, and that the court would pronounce for the wages and damages, and for such further relief as to justice shall appertain, and for costs. There is a general verification of the truth of the facts stated in the libel by the libellant's oath. The master appeared and put in a dilatory exception to the libel in the nature of a demurrer, and says: "That he is under no obligation or necessity by law to answer the same, in this court, and that this court has no proper authority to hear and try the same, and that process in the case issued improvidently, and in particular he excepts thereto. 1st. That the said libel endeavors to unite and mix up distinct, heterogeneous, and multifarious matters which cannot be joined in the same complaint: namely, matter in alleged subtraction of wages and matter of damage, assault and battery, and wrongful imprisonment." 2d. That there is no proper account or exhibit of the pretended demand for a claim for wages; and, "3d. That there is no proper oath or attestation in due form of law to the truth of the facts undertaken to be set forth in said libel."

Codman & Fox, for libellant.

C. S. Daveis, for respondent.

WARE, District Judge. The pleadings, in this case, present a number of preliminary questions, not indeed touching the merits of the case, but which are important to be considered as affecting the practice of the court and its course of proceeding. For though the course of courts of admiralty is remarkable for its simplicity, and its freedom from artificial and technical forms, yet no court can be entirely without them. To a certain extent they are necessary to the regular, safe, and orderly administration of justice. As far as they are established the court is bound to observe them. In considering the causes of the respondent's exception, I shall invert the order in which they are presented in the pleadings.

One cause assigned for exception to the maintenance of the action is, "that there is no proper oath or attestation in due form of law, to the truth of the fact set forth in the libel." It is the practice of the admiralty, before issuing process of attachment, to require the libellant to verify the claim or cause of action on which the libel is founded by oath. This practice is consonant with that of the civil law, and is supposed to have been derived from it. That law required of the parties and their advocates what was called the oath of calumny. The oath appears to have contained several clauses, binding the parties to act generally with good faith in the management of the cause; but the principal and most important clause, in the oath taken by the actor or plaintiff, was that the action was not commenced, "calumniandi animo sed existimando se bonam causam habere." Just. Inst. 4, 16, 1; Vinn. in loc. Gaius' Comm. L. 4, 176; Heinn. Recit. lib. 4, tit. 16, 1. He was required to swear that he believed his cause of action to be just, and that he did not prosecute it for the purpose of vexing and harassing the opposite party. It appears that formerly the

[1] [Reported by Hon. Ashur Ware, District Judge.]

oath required by the admiralty was substantially the same as that required by the civil law, and like that, was called the oath of calumny.[2] But admiralty courts in this country, I believe, at least in this district, have required nothing more of a libellant than a general verification of the cause of action by his affidavit. The clauses in the oath of calumny, relating to good faith and probity in the conduct of the suit, are substantially comprehended in the official oath which every proctor and counsellor takes on his being admitted to practice in the court.

The oath of calumny has sometimes been derided by common lawyers as a useless and unmeaning formality, and as giving occasion to perjury rather than affording any substantial security against groundless and vexatious suits. And see 3 Principia Juris Civilis, Dupin, p. 347. "De lubricitate jurisjurandi sappletorii." That it does not in all cases prevent litigious men from prosecuting vexatious suits is undoubtedly true. That a party swearing to his belief in the justice of his cause, does not always weigh the matter with all the scrupulousness that may justly be expected of an upright and honorable and conscientious man on the occasion of so solemn an appeal, may be admitted; and still it may with great appearance of reason be supposed to have no inconsiderable influence in checking the temerity of litigation. The experience of the common law courts has taught them the advantage of introducing into their practice something very analogous to the oath of calumny. The affidavits required of parties in the progress of a suit, as that of a plaintiff to hold the defendant to bail, that required of a party in support of a motion for a continuance, that of the loss of a written instrument as a ground for admitting secondary evidence of its contents, and many others are only particular cases included in the general terms of the oath of calumny. Besides it does not seem unreasonable that a party should be required to swear to his own belief in the justice of his cause before he is permitted to bring another into court to defend himself against it, and before he should be authorized to require a court to investigate the grounds of it. This, at least, seems to be the view which courts of admiralty have taken of the subject. The objection in this case is, that the verification of the cause of action is not sufficiently formal and exact. In the affidavit annexed to the libel, the libellant swears, "that the facts set forth in his libel are to the best of his belief true." The rules of the court do not require any particular form of affidavit. It is sufficient if the cause of action be substantially verified by the oath of the party; and I do not see that the form in which it is done in this case, is open to any particular ob-

jection. It is a sufficient compliance with the rules of the court.

Another cause of exception is, "that there is no proper account or exhibit of the pretended demand or claim for wages." It is usual to annex to the libel, in a suit for wages, an account stating the time of the service, the rate and amount of wages, with a credit for the amount advanced during the voyage. But this account is no part of the libel, nor is it necessary that any such account should be annexed to it. It is sufficient if the libellant states the contract and avers the service with proper certainty, and that there is a balance of wages remaining due. It is not, that I am aware, absolutely necessary that he should aver any precise balance to be due. The contract upon which his claim is founded always remains in the hands of the other party, who is bound to produce it on trial. If he does not, the seaman may state the terms of the contract, and his statement is held to be conclusive until it is disproved by the master. Act July 20, 1790, c. 56, § 6 [1 Story's Laws, 105; 1 Stat. 133, c. 29]. When the contract is produced, that must prevail, and if it is found that the seaman has alleged the rate of wages to be less than what he in fact contracted for, or the balance less than that really due, the court has authority under the prayer for further relief, to award to him the sum justly due, even if it exceeds the amount demanded in the libel. A court of admiralty is not limited in its decree to the precise amount for which the libel is entered. When it appears on investigation that the libellant has merits, and that justice requires a larger remuneration than he has demanded in his libel, the court is not precluded by any technical forms from doing full justice. In a case of salvage before Sir William Scott, which was entered for £800, it appearing at the trial to be a case of extraordinary merit, he decreed two thirds of the whole amount to the salvors, amounting to more than £2,100, nearly three times the sum demanded by the libel. The objection was taken by counsel that no more could be decreed by the court than had been demanded by the parties in the libel. But he overruled the objection. "The whole matter," says he, "is before the court, and I think the court is by no means limited by any particular demand of the parties." The Jonge Bastiaan, 5 C. Rob. Adm. 322. The want of an exhibit, or a particular specification of the claim, is no sufficient cause of exception to the sufficiency of the libel.

The remaining cause of exception relied upon presents a question of more gravity and importance, and requires a more careful consideration. It is, that the libellant has mixed up distinct and multifarious matters in his libel, which cannot be united in the same complaint; namely, matters of alleged subtraction of wages, with matter of damage and personal wrongs; and it raises the question how far different and unconnected causes of action may be united in one libel. The counsel for the

---

[2] The form of the oath is given in Hall. Adm. tit. 45, additions, taken from Clerke's Practice of the Ecclesiastical Courts. See, also, 4 Reeves, Hist. Eng. Law, 16.

libellant referred to Dunlap's Admiralty Practice as an authority for uniting in one libel two causes of action entirely distinct and independent of each other. It is there said that in admiralty suits in personam, all causes of admiralty cognizance existing between the same parties, whether founded on contract or tort, may be joined in the libel and stated in distinct articles. Pages 88, 89. The principle here laid down is certainly true in a limited extent, but it may be doubted whether it is correct in the broad and unlimited terms in which it is expressed. It is a common practice in the admiralty to proceed in the same libel for wages earned in a particular voyage, and for damages for a tortious discharge in the same voyage. Emerson v. Howland [Case No. 4,-441]; The Exeter, 2 C. Rob. Adm. 261; The Beaver, 3 C. Rob. Adm. 92; Mahoon v. The Glocester [Case No. 8,970]. A seaman may also recover, in the same libel, wages and the statute allowance made to a mariner who is discharged from a vessel in a foreign country with his own consent. Orne v. Townsend [Id. 10,583]. But these claims have been allowed rather in the nature of additional wages, or as claims legally connected with and growing out of the principal claim, than as distinct and independent causes of action. It is not, however, intended to be denied that if they are considered as independent causes of action, a court of admiralty might not pronounce for them when set forth in a separate article in a libel for wages. But a claim of damages for a personal wrong is an entirely independent claim, and perfectly unconnected with that for wages. How far separate and unconnected causes of action, that is to say, distinct and independent actions, may be united in a single suit and prosecuted together in the admiralty, is not, that I am aware, very clearly defined by any settled rule of jurisprudence. Phebus v. The New Orleans, 11 Pet. [36 U. S.] 175. It appears, however, to be the established practice in the high court of admiralty in England, that a cause of damage, as a suit for a personal tort is technically called, cannot be united with an action for wages. The reasons are said to be, that a cause of damage is not of so favored a nature as a suit for wages, and that it is a plenary action, while an action for wages is summary. The Jack Park, 4 C. Rob. Adm. 308. The distinction between these two kinds of action, as stated by Brown, is, that in plenary actions the order and solemnities of the law are exactly observed. There is a formal contestation of suit, a regular term to propound, and solemn conclusions from the facts; and if there is the least infringement of the regular order, the whole proceedings are annulled. In summary cases this order and solemnity are dispensed with. These causes proceed more rapidly, and without all these technical formalities, and the libel and all the proceedings, it is said, may be viva voce. Browne, Civ. & Adm. Law, 413, note; Hall, Adm. tit. 19, note.

I am not aware that the distinction between plenary and summary causes has ever been adopted in the practice of the admiralty in this country. In our practice all causes are summary, and the habit of the court is to proceed in all alike, with as much expedition, and with as little of the delay and embarrassment of artificial forms as is compatible with the safe and orderly administration of justice. If in a cause of damage and in one for wages there is no difference in the course of proceedings, there does not seem to be any insurmountable objection to their being united in the same suit. In the practice of the common law courts, several distinct and independent causes of action may be united in one suit, provided the causes of action are all of the same nature, and the course of proceeding is in all the same. 1 Chit. Pr. 196. And the civil law, at least according to the modern practice of that law, allows, under the name of cumulation of actions, the consolidation of distinct and unconnected actions upon the same principles. An indefinite number of actions, it appears, may be united in one suit, provided they are all of the same general nature, and they do not occasion a confusion in course of proceeding. If this effect is produced, the libel is liable to the dilatory exception ineptæ cumulationis (Schaumburgh, Princip. Prac. Jur. lib. 1, cc. 1, 10; Id. lib. 1, Membr. 2, cc. 4, 5; Gail, Pract. Obs. L. 1, Obs. 63; Voet ad Pand. L. 2, 13, 14; Vinnius, Select Quæst. Jur. lib. 1, c. 39; 2 Browne, Civ. & Adm. Law, 363) in the nature of a demurrer for want of form. But the danger of confusion in the processes is not perhaps the only reason for limiting the indefinite liberty of uniting different actions in one suit. The technical and artificial rules of proceeding in courts of justice are devised to promote the cause of justice, by producing clearness and certainty in its course, by limiting its expense, and by hastening the progress of suits to an early decision. The consolidation of a number of actions into a single suit saves the parties the expense of a plurality of actions, and in courts of the common law this is not only allowed but favored, when the causes of action are of the same nature, and no confusion is thereby introduced into the processes of the court. The simplicity and directness, and more especially the artificial formulas of pleading at the common law, enable the courts to embrace several causes of action in the same suit without inconvenience. But a court of equity will not allow a plaintiff to bring every matter of controversy, cognizable in that court, which he may have with the defendant, into a single bill. If he introduces matters which are entirely independent, which have no connection or relation to each other, the bill will be demurrable for multifariousness. Ward v. Duke of Northumberland, 2 Ansr. 472; West v. Randall [Case No. 7,424]. The difference of the modes of proceeding in the two jurisdictions may account for the difference of practice in this respect. A prac-

tice which may be found convenient and beneficial, in proceeding according to the course of the common law, might prove not only inconvenient but embarrassing to the course of justice in a court whose modes of proceeding are widely different. The course of proceeding in the admiralty bears a much closer analogy to that of a court of equity than to that of the common law, and the objections to admitting multifarious and unconnected matters into a suit apply with nearly the same force in the admiralty as in equity.

But there is another objection to the indefinite liberty of cumulating actions as a matter of right, which applies with particular force to the jurisdiction of the admiralty; it is its unavoidable tendency to delay the progress of suits. In maritime causes, and particularly in those to which mariners are parties, it is of primary importance that justice should be promptly administered. Men whose occupation is upon the sea, and who are dependent on the opportunities of the wind and weather, have but little time to give to their business on shore. They cannot, without great inconvenience and loss, remain at home to await the slow progress of a lawsuit in the ordinary courts of justice. In most maritime nations special courts are established to hear such causes, which proceed summarily, that the interests of navigation may not suffer from the delays of the law. It is from this motive, as Kuricke informs us. that an appeal is not allowed by the Hanseatic law in maritime causes, and in all courts instituted for the trial of these causes, the proceedings are summary and the process short. Kuricke, Quæst. Illust. 27. The action of courts of admiralty, in which these causes are usually heard, is prompt. It is always open to suitors, and does not require them to await its regular terms, but takes up causes when the parties apply, and hears them as soon as they are prepared. "Ut levato velo istæ causæ cognoscantur" (Code 11, 5, 5) is the order of the civil law in causes of wreck; and the expression is often applied to all summary causes in the admiralty. Its modes of proceeding are plain, simple, and direct, and it studiously excludes from them everything that tends to prolixity. It is obvious that nothing could tend more directly to draw suits out to an inconvenient length than the allowing as a general practice, independent actions, each depending on its own proper evidence, to be consolidated into one suit, by which each cause must necessarily await the slow progress of all the rest. If the libellant as a matter of right may unite in one suit independent and unconnected actions. a mariner may join in a libel for wages earned in one voyage a cause of damage in another. It is easy to see the oppressive use that might be made of the process of the court in this way, and that masters of vessels might be subjected to most inconvenient embarrassments in their business, or be obliged to buy their peace when there is no just ground of complaint. "Mare frequentantium ventisque commodis utentium intersit, controversias eorum quantum fieri potest celerrime expediri." Locenius, De Jure Mar. lib. 3, cap. 10, 2.

But there is one objection to the union of these two actions in one libel founded on the different qualities of the master's liability. It is true that he is personally liable for the wages, but he is not liable for them as for his own proper debt. He is liable in his quality as master, and if he pays them, he has his remedy against the owners. But the damages which are recovered against him for a personal wrong are his own proper debt. There is a manifest irregularity and impropriety in mixing up, in one suit, actions to which a party is liable in different characters. The common law will not allow the joinder of actions against the defendant to which he is liable in different characters, as his own proper debt, with one which he owes as executor or administrator. My opinion is, that these two actions cannot be united in one libel, at least, if the master excepts to the union. I do not say that if no objection was made the court might not adjudicate on both actions in one suit, making separate decrees in each case. But if the objection is taken, my opinion is that it must be allowed. In Ryan's Case, referred to as having been decided in the district court of Massachusetts, it is not stated whether there was an exception to the joinder. The statement is that the joinder is allowed but not required. I presume allowed when no exception is taken.

The exception of the respondent is allowed for the first cause assigned in support of it.

[Upon an amended libel the plaintiff recovered $27.65 for wages. Case No. 3,597.]