## Case No. 2,160.

### BURKE v. BUTTMAN.

### The ELLA FRANKLIN.

[1 Lowell, 191.][1]

District Court, D. Massachusetts. Dec., 1867.

SEAMEN — SHIPPING ARTICLES — CONSTRUCTION— DISCHARGE — RIGHT TO BE RETURNED HOME — RIGHT TO WAGES.

1. Shipping articles described the voyage to be from "Boston to Goree, Africa, at and from thence to such port or ports as the master might direct." *Held*, that though these articles were void, they would not authorize the master to discharge the men at any African port or ports in his discretion, but must be construed as against the owners to intend a voyage of which a port of discharge in the United States would be the final terminus.

2. The master in such a case could not oblige the men to ship in Africa on board another vessel belonging to the same owners, and for being forced to serve in such a vessel and being there kept on short allowance, the owners are responsible in damages. Nor could he discharge them abroad, unless the vessel was condemned, or sold, or wrecked.

3. The seamen having been discharged in Africa against their will, were *held* entitled to wages until their return to the United States, and were not bound to come back as seamen in the vessel belonging to the same owners, in which they had already been illtreated.

[Cited in Worth v. The Lioness No. 2, 3 Fed. 925.]

[See The Hudson, 8 Fed. 167; The Centennial, 10 Fed. 397.]

In admiralty. These three libellants shipped as seamen on board the schooner Ella Franklin at Boston, on the third of November last. The voyage was alleged to be from Boston to the Cape de Verd Islands, one or more ports as the master might direct, and back to the United States, the voyage not to exceed six months. The articles described the voyage thus: From Boston to Goree, Africa, at and from thence to such port or ports as the master may direct, wages to be paid in United States currency or its equivalent at the current rate of exchange. Parol evidence was admitted that the owners never intended that the schooner should return to the United States, and the shipping masters testified that they informed the seamen of this fact. The only libellant who was examined was equally positive that he was not informed of it, and there was evidence tending to show that the other libellants did not so understand the contract. At the first port in the Cape de Verd, before the vessel had arrived at Goree, the master obliged two of the men to go on board the bark Warren Hallett, belonging to the same owners, and which was bound to the coast of Africa and thence home. The men never consented to this transfer, and never signed the articles of the bark, and upon the arrival of the vessel at Bathurst on the coast, some three weeks afterwards, they demanded to be sent back to the schooner which

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

had accompanied the bark. The master not consenting to this course, and the consul finding that they were not legally bound to the bark, they were discharged against their will. The third man was discharged at Bathurst, directly from the schooner, but without his consent. It was agreed that all wages due up to that time, and three months' extra wages were paid to the consul; but this money was expended by the consul in paying their charges at Bathurst and their passage home to New York, where they arrived March 3, 1867. The two men who were transferred to the bark refused to serve while on board of her from the Cape de Verd to Bathurst, which was a voyage of some days' duration, and were kept on bread and water as a punishment for that refusal. At Bathurst all three were offered places as seamen on board the bark, which was soon to come home, and which actually arrived at Boston in February, but they were not allowed to come as consul's men, and waited some weeks longer.

E. Merwin, for libellants.

W. A. Field, for respondents.

The articles describe a voyage sufficiently as far as Goree, and if the seamen could leave the vessel there by reason of the indefinite manner in which the contract is expressed, the master had the corresponding right to discharge them there; and, having done so, they were entitled to nothing, not even to the three months' wages.

LOWELL, District Judge. It is not necessary to decide whether the articles were wholly void, because the voyage was partly performed under them. It cannot for a moment be admitted that the master or owners can take advantage of a defect in the contract to terminate it at pleasure. The obligation is all on one side; it is the duty of master and owners to see that the voyage is fully and fairly described in writing, and no duty rests upon the seamen in regard to it. They have nothing to do with the matter. These articles must be construed most strongly against the owners, and they may fairly be held to mean that among the ports the master should direct was to be some home port. It cannot be left to a doubtful interpretation. If the master intended to discharge the sailors at one or more ports of Africa, he should have said so, clearly and explicitly, in writing. As it is, I must hold, and do so without the slightest difficulty, that the men had a right to come home in the vessel in which they went out, and that the master had no right to transfer them to another vessel with different officers, nor to discharge them on the coast unless the schooner was sold there, wrecked, or condemned, in which several cases the statutes provide for one month's or two months' wages, or more, according to circumstances.

The right which he assumed to discharge, some at one port, some at another, and still others at a third, is not warranted by the articles. It is entirely clear that the libellants were unlawfully discharged and are entitled to their wages up to the time of their return to the United States, unless something is due by way of recoupment or deduction for wages which they might have earned in the mean time.

Upon this point the evidence is that they might have come home directly in the Warren Hallett, and have earned wages all the time. I admit the principle that owners have a right to require diligence even in seamen whom they have wrongfully discharged; and that idleness or a sullen refusal to be employed should not be allowed to swell the damages. But the answer of the libellants is in this respect satisfactory. Two of them had been improperly put on board the Warren Hallett, and had had a controversy with her master, in which the latter had been in the wrong and had been overruled by the consul. Under these circumstances the libellants might well be slow to take service with him again. It was too much to expect of human nature that he should not look with some prejudice, even though it might be unconsciously, upon their future conduct. I am of opinion, therefore, that the three libellants are entitled to four months' wages, at the rates mentioned in the shipping articles; and that the two who were obliged to go on board the Warren Hallett are entitled to damages for their treatment on board of her.

I ought to observe here, that the master of the Ella Franklin does not appear to have intended any wrong to these men, nor to have used any violence; perhaps he did not even threaten any. He was impressed with the idea, familiar to his own mind, that his schooner was not to return. He honestly thought, perhaps, that the very best thing for these sailors to do was to serve on board the bark, a better vessel than his own, more convenient and more seaworthy. He forgot that the sailors had a right to say, as they did say, We have made no such bargain; we choose to stick to you and your schooner.

Looking at the circumstances and the absence of all violence, abuse, and actual personal suffering, except in a spare diet, I shall give to each of these seamen two dollars a day for the time they were actually detained on board the bark.

It will be seen that my opinion does not turn upon the oral evidence at all. It was admitted, in favor of the seamen, because the circuit court has held that it is admissible for them. It was admitted for the owners merely in rebuttal. It is a dangerous sort of evidence, and one on which I am always reluctant to decide a case. It must not be supposed that if it were fully and clearly established by such evidence that the seamen were to be discharged in Africa, that the master would be entitled to discharge them there. The rule of evidence, like the contract itself, is established for the benefit of the ignorant and careless seamen, and for the seamen only. Masters and owners have ample protection in the contract itself, which if properly drawn up and clearly explained to the men will be conclusive. These articles do not fully and fairly warn the men of the rights which the master undertook to exercise. It is upon the articles that this case is decided. Decree for the libellants.