WORTH and others *v.* STEAM-BOAT LIONESS No 2.

*(District Court, E. D. Missouri.* June 15, 1880.)

1. MARINER—IMPLIED CONTRACT.—In the absence of shipping articles, there is an implied contract that the mariner will be returned to the port of shipment.

2. SAME—INTERNAL NAVIGATION—RETURN BY RAIL.—A mariner will not be justified in waiting until spring for a vessel to take him back to the port of shipment, where internal navigation has been closed by ice, and he has been discharged at a port whence he could return by rail.

3. SAME—COMPENSATION.—In such case, where the mariner has not been employed for a specific period of time, he is entitled, by way of compensation, to the amount of his necessary transportation and expenses, together with his rate of wages from the date of his discharge to the date of his arrival at the port of shipment.

In Admiralty.

*H. E. Mills* and *J. P. Dawson*, for libellants.

*H. A. & A. C. Clover*, for claimants.

TREAT, D. J. The demands are by mariners, under shipping contracts. The libellants shipped respectively at Pittsburgh and Louisville, without shipping articles or any express statement as to the proposed voyage. All parties knew that the vessel was engaged in towing claimant's barges from one point on the Ohio river to another point on the same river, and also to different points on the Mississippi river. The vessel, in the course of her voyaging, encountered ice in the Mississippi river and laid up at Bushburg, about 20 miles below St. Louis. As it was uncertain how long she might be detained, the voyage was broken up and the libellants were discharged, receiving the wages earned to that time. They insisted upon a sum additional, sufficient to return them to their respective ports of shipment, which request was refused. The libels are to recover the necessary expenses of their return, and for the additional sum of $30 each.

It is obvious that the detention of the crew on full pay until the winter season ended, or the river was clear of ice, might have been very expensive to the vessel; yet their right to be transported to their port of shipment is well settled. A mariner who ships for a voyage cannot be discharged without cause in a foreign port without the known legal results. When there are no shipping articles, and no prescribed voyage stated, the implied contract or legal presumption is that he is to be returned to the port of shipment. Were this otherwise, most disastrous consequences might often result. The doctrines as to seagoing vessels are well settled, and the principles on which they have been asserted apply to internal navigation, in the absence of any congressional legislation upon the subject. If a mariner shipped on a vessel bound to Fort Benton, Montana, it could not be fairly urged that, in the absence of an express agreement, he could quit the vessel at Fort Benton, and with impunity disable her from returning; nor, on the other hand, that he could be left in that distant region without means of returning. The duties are reciprocal.

This court had occasion years ago to pass upon a like question, occurring upon the upper Missouri. Reported cases seem not to be fully in accord; yet, when carefully considered, are not different in principle. A mariner wrongfully discharged may work his passage home in the same capacity as that for which he was originally engaged, and thus save the cost of transportation to the owners of the vessel. In the absence of such an opportunity he may return as a passenger. In seagoing voyages, where the destination is to a foreign port specified, and a direct return to the port of shipment, it has been decided that his wages should be paid up to the time of the vessel's return, and it has also been decided that his wages should run to the date of his return in another vessel. Circumstances may make one or the other of these rulings applicable as to foreign voyages.

In the internal navigation of this country it is evident that no arbitrary rule can obtain, in justice to the interests involved, for, as in the case under consideration, the return could not be made in a reasonable time on a vessel, because navigation was closed by ice. The mariners, being discharged at a port whence by railroad they could return home in a few days, would not have been justified in waiting until spring for a vessel to take them to their port of shipment. Hence, the rule for their compensation is the amount of their necessary transportation and expenses, together with their rate of wages from date of discharge to their arrival at the port of shipment; for the contracts were not for a specified time of employment.

It might have been that their term of service would have ended sooner than it did; for the voyage might have been made only to Cincinnati or Louisville and back to Pittsburgh. It must, however, be always considered that mariners stand in the relation of wards of court, and that, inasmuch as it is in the power of the master and owners to make their contracts definite by shipping articles or otherwise, the legal presumption arises, if they do not specify in their agreements to the contrary. The differences in river navigation from seagoing voyages have been often considered in this court,

and this case furnishes an apt illustration of what maritime principles require. From various causes a steam-boat may have to procure additional mariners in different stages of her route, instead of an entire crew for the whole voyage; yet the same rule must apply to each.

It is very easy for officers to state to a mariner definitely what his employment is to be, whether to be discharged at the port of arrival or otherwise, if they wish to limit his term of service or reserve a right to discharge him before his return to the port of shipment.

*Brown* v. *Lull*, 2 Sum. 441, 449; *In re Glocester*, 2 Pet. Adm. 403, 405; *In re Rovena*, 1 Ware, 309; *The Exeter*, 2 Rob. Adm. 261; *Beaver*, 3 Rob. Adm. 92; *Sullivan* v. *Morgan*, 11 Johns. (66) 67; *Hoyt* v. *Wildfire*, 3 Johns. 518, 520; 28 Mo. 280; Id. 338; *Rice* v. *Polly & Kitty*, 2 Pet. Adm. 420, 423; *The Union*, Blatchf. & H. 568; *Farrell* v. *French*, Id. 275; *Emerson* v. *Howland*, 1 Mason, 45; *Nevitt* v. *Clarke*, Olc. 316; *Jones* v. *Sears*, 2 Sprague, 43; *Brunent* v. *Taber*, 1 Sprague, 243; *Hutchinson* v. *Coombs*, 1 Ware, 65; *Sheffield* v. *Page*, 1 Sprague, 285, 288; *Sheffield* v. *Page*, 2 Curt. C. C. 377; *Hunt* v. *Colburn*, 1 Sprague, 215; *Nimrod*, 1 Ware, 9; *Anderson* v. *Solon*, Crabbe. Adm. 17; *The Gazelle*, 1 Sprague, 378; *Burke* v. *Buttmann*, 1 Lowell, 191; *The Elizabeth*, 2 Dodson, 402, 412; *Brooks* v. *Dorr*, 2 Mass. 39; *The John Martin*, 2 Abb. U. S. Rep. 172, 181; *The B. F. Bruce*, Newberry, 539; *The Crusader*, 1 Ware, 437; *White* v. *Atkins*, 8 Cush. 367; *Rossiter* v. *Cooper*, 23 Vt. 522; *Heim* v. *Wolf*, 1 E. D. Smith, 70.