## Case No. 15,325.

UNITED STATES v. HATCH et al.

[1 Paine, 336.] [1]

Circuit Court, D. New York. April Term, 1824.

SHIPPING—STATUTORY BOND—ALTERATIONS—LEAVING SEAMEN IN FOREIGN PORT—CERTIFICATE OF CONSUL.

1. A bond given by the master of a vessel, conditioned for the exhibition of the list of his ship's company to the first boarding officer, at the first port of his arrival in the United States, and for the production of the crew, was *held* to be a valid bond under the act of February 28, 1803 [2 Stat. 203], although it was not expressed to be taken in pursuance of said act, and although it was not stated on the face of the bond which of the obligors was the principal and which the surety. And the declaration on the bond was *held* good although it did not refer to the statute.

2. An alteration in the bond, made by one of the clerks of the custom-house, after its execution, for the purpose of rectifying it, but which did not affect its construction, was *held* to be the act of a stranger, and immaterial, and not to avoid the bond.

3. The certificate of the consul, to excuse the master, under the proviso of this act, must state that the seamen were left in a foreign port with his consent.

4. A certificate that they were left in a hospital unable to return, and that the master had paid for their maintenance, and left the amount of their wages, was *held* insufficient, and parol evidence of the consent of the consul or seamen inadmissible.

[Cited in U. S. v. Parsons, Case No. 16,002.]

5. The sum of 400 dollars, in which the bond is to be taken, is intended as a forfeiture, and not as a penalty to cover such damages as may be assessed. Impossibility of assessing the damages contemplated by the act.

[Cited in Marble v. Fulton, Case No. 9,059. Approved in U. S. v. Montell, Id. 15,798. Cited in brief in U. S. v. Cutajar, 59 Fed. 1001.]

Error from the district court of the United States for the Southern district of New York.

Joseph Hatch, master of the ship India, of New York, and Caleb Barstow, his surety, on the 8th day of December, 1821, executed a bond to the United States in the sum of 400 dollars, with the following condition:

"Whereas the above bounden Joseph Hatch, hath delivered to the collector of the customs for the district of New York, in the state of New York, a verified list, containing, as far as he can ascertain them, the names, places of birth, residence, and description of the persons who compose the company of the said ship, called the India, now lying in the said district, of which he is at present master or commander, of which list the said collector has delivered to the said Joseph Hatch a certified copy. Now the condition of this obligation is such, that if the said Joseph Hatch shall exhibit the aforesaid certified copy of the list to the first boarding officer, at the first port in the United States at which

---

[1] [Reported by Elijah Paine, Jr., Esq.]

he shall arrive on his return thereto, and then and there also produce the persons named therein, to the said boarding officer, except any of the persons contained in the said list who may be discharged in a foreign country with the consent of the consul, vice consul, commercial agent, or vice commercial agent there residing, signified in writing, under his hand and official seal, to be produced to the collector of the district within which he may arrive as aforesaid, with the other persons composing the crew as aforesaid, or who may have died or absconded, or who may have been forcibly impressed into other service, of which satisfactory proof shall be then also exhibited to the said last mentioned collector, then, and in such case, the above obligation shall be void and of no effect, otherwise it shall abide and remain in full force and virtue."

The plaintiffs below declared on this bond, without referring to any statute, assigning as breaches that the India departed on a foreign voyage, and on the 27th day of April, 1822, returned to the United States, arriving first at the port of New York, but did not produce to the first boarding officer the persons named in the list of his crew, nor exhibit to the collector satisfactory proof of the death, absconding, or forcible impressment into other service of such persons.

The defendants pleaded the general issue with notice of special matter.

At the trial the plaintiffs offered the bond in evidence as taken under the act entitled "An act supplementary to the act concerning consuls and vice consuls, and for the further protection of American seamen." The subscribing witness who was called to prove the execution of the bond, also proved, that after its execution he altered the word "of," between the words "certified copy of the list," and the words "the first boarding officer," to the word "to." This he did of his own accord and without the knowledge or concurrence of the defendants. It was objected to the bond as evidence, that it was rendered void by this alteration, and also, that it did not purport to be taken pursuant to said act, and that there was no averment of the fact in the declaration; and that therefore a recovery under said act could not be had upon it. It was also objected that the bond did not purport to be made by Hatch as principal and Barstow as surety, but was joint and several. These objections were overruled.

It appeared that the India had made a voyage to Lisbon, and that two of the crew did not return with the vessel to the United States. To justify this, the defendant offered in evidence the following certificate of the consul of the United States at Lisbon.

"I, J. Pemberton Hutchinson, consul of the United States of America for the city of Lisbon, &c. do hereby certify, that Joseph Hatch, master of the ship India, of New York, has left in the hospital of this city, George Gardner and John Williams, (two American seamen as appears from the Roll d'Equipage,) in consequence of their being unable to proceed on the voyage, caused by sickness. I further declare, that Captain Hatch has not paid any extra wages, as the act for the protection of seamen directs to provide passage for those seamen home; he has paid for their maintenance in the hospital, and has left the amount he says is due them for services on board the ship India. Given under my hand and seal of office, in Lisbon, this twenty-third of March, one thousand eight hundred and twenty-two. J. Pemberton Hutchinson."

They also offered to prove that the two seamen were left at the hospital in Lisbon by their own request, being sick and unable to return with the vessel; that the master was very desirous to bring them back with him, and that the consul verbally expressed his satisfaction at their being left behind. They also offered to prove that different consuls of the United States at foreign ports, had granted their consent in writing to the master, that seamen should be left, where they were left under circumstances like those in this case. This evidence the court rejected, and the defendants excepted to the decision.

The court charged the jury that the alteration in the bond was immaterial and did not avoid it, and that they were not to assess damages for the breaches, but find a verdict for the sum of four hundred dollars, as upon a bond taken in pursuance of said act of congress. The defendants excepted to the charge. The jury found a verdict for four hundred dollars debt and six cents costs. [Case unreported.] These proceedings were brought before this court by a bill of exceptions.

H. Ketchum and T. Fessenden, for plaintiffs in error.

R. Tillotson and C. G. Haines, for defendants in error.

THOMPSON, Circuit Justice. This case comes up on a writ of error to the district court for the Southern district of New York, and the error assigned grew out of a bill of exceptions, taken at the trial, and may be arranged under the following heads: (1) Whether the bond upon which the suit is founded may be considered as taken under and by virtue of the act of congress of February 28, 1803, entitled "An act supplementary to the act concerning consuls and vice consuls, and for the further protection of American seamen." (2) Whether the alteration made in the bond after its execution by the defendants made it void. (3) Whether the certificate of the American consul at Lisbon, and the parol testimony offered, showing the reason why the seamen were left, were properly rejected. (4) Whether the

four hundred dollars named in the bond, is to be deemed a penalty, and damages to be assessed by a jury, or whether it is to be considered in the nature of stipulated damages, and the whole sum recoverable if the bond is forfeited.

Under the first point it is alleged, that it ought to appear upon the face of the bond that it was taken under the statute, and if it does not so appear, it ought at least to be averred in the declaration that it was so taken. The act of congress does not prescribe the form of the bond. It points out the duty to be performed by the master, before he can obtain a clearance on a foreign voyage. He is required to deliver to the collector of the customs, a list containing the names, places of birth, residence, and description of the persons who compose his ship's company, as far as he can ascertain them, to which he is to annex his oath verifying the same. The collector is to deliver to the master a certified copy of this list; and the master is required to enter into bond with sufficient security, in the sum of four hundred dollars, that he shall exhibit the said certified copy of the list to the first boarding officer, at the first port in the United States at which he shall arrive on his return thereto, and produce the men named in the list. The act however, contains a proviso, that the bond shall not be forfeited, on account of the master not producing any of the persons contained in the list, who may be discharged in a foreign country, with the consent of the consul, vice consul, commercial agent, or vice commercial agent there residing, signified in writing under his hand and official seal, to be produced to the collector with the other persons composing the crew, nor on account of any such person dying, or absconding, or being forcibly impressed into other service, of which satisfactory proof shall be exhibited to the collector.

The bond describes Joseph Hatch as master or commander of the ship called the India, of New York, and lying in the district of New York, and it is recited in the condition, that he had delivered to the collector of the customs for the district of New York a verified list of his ship's company, and concluding with a condition, substantially, according to the provisions of the act. I can perceive no reason why the bond should expressly refer to the act; no form is prescribed by the act; that is left in the discretion of the collector. It is not necessary for the information of the obligors. The authority under which it is taken grows out of a public law, with a knowledge of which the defendants are chargeable, and it is not to be presumed they were ignorant of the duty imposed upon them. The condition of the bond which points out the obligations assumed by them is in strict accordance with the law.

It was urged in argument under this point,

that the bond does not distinguish who was principal and who security. A sufficient answer to this would be simply that the act does not require it. But another, and decisive answer may be given; that the objection is not warranted by the fact. The bond does not to be sure, say in terms who was principal and who security, but it states what is equivalent to it. It describes Hatch as the master of the ship, and recites that he has furnished the collector with a verified list of his ship's company, and performed the duty required by the law before he could obtain a clearance, all which are amply sufficient to show that he was the master and of course the principal in the bond; and it follows as a necessary consequence, that the other must be the security, as there cannot be two masters of the ship. Nor is there any ground for the objection that the declaration contains no averment that the bond was given pursuant to the statute.

2. The alteration made in the bond after it was executed, consists in erasing the word "of" and inserting the word "to" in that part which requires the master on his return to the United States, to exhibit the certified copy of the list of the ship's company which he had received of the collector. In the bond as it stood originally, it read thus: "If the said Joseph Hatch shall exhibit the aforesaid certified copy of the list of the first boarding officer," &c. The word "of" immediately preceding the words "the first," was changed for the word "to," so as to read as the bond now stands, "shall exhibit the aforesaid certified copy of the list to the first boarding officer," &c. The alteration was made by the witness to the bond, and who was a clerk in the custom-house in New York, but must be considered a mere stranger so far as relates to the custody or taking of the bond. This duty is by the law entrusted to the collector; and even admitting his acts to be deemed the acts of the United States, it would be carrying the principle to an alarming extent, to consider all the clerks in the custom-house the agents of the United States, and their acts as the acts of the United States.

The alteration must therefore be considered as made by a stranger, and the inquiry will be whether it was such an alteration as the law denominates material: and I think it was not. Looking at this clause in the bond in connexion with the context, the meaning and construction must be the same with or without the alteration. The bond would be incongruous and absurd, with the word "of" instead of "to." The recitals showed the certified list to be that of the collector and not of the boarding officer. No such document existed, and to require the exhibition of such a list, would be requiring an impossibility. The document to be exhibited was the aforesaid certified list. This of course referred to a paper before mentioned and described

as the certified copy of the list delivered by the collector to the master. The concluding part of the sentence shows likewise that such was the clear and obvious intention, and must have been the construction had the word "of" been left in the bond. The master is also to produce the persons named in the list, to the said boarding officer; showing obviously that the person to whom the certified copy of the list of the ship's company was to be exhibited and to whom he was to produce the persons named in the list, was the same, to wit, the first boarding officer. It is very evident therefore, that the alteration was immaterial, both because it did not alter the meaning and construction of the bond, and because the condition was absurd with the word "of" in the place of "to." The alteration did not therefore in my opinion invalidate the bond.

3. There was no error in excluding the consul's certificate, and the parol evidence offered to show the reason why the seamen were left at Lisbon. This evidence was offered for the purpose of bringing the case within one of the exceptions in the act, which would excuse the master for not producing the seamen on his return to the United States, and save the forfeiture of his bond. But the testimony did not satisfy the requisitions of the act. The law excuses the master for not producing any person contained in the list who was discharged in a foreign country, with the consent of the consul, vice consul, commercial agent, or vice commercial agent there residing, signified in writing, under his hand and official seal. The certificate of the consul offered in evidence, states that the two seamen, Gardner and Williams, were left in the hospital at Lisbon, in consequence of their being unable to proceed on the voyage, by reason of sickness; that the captain had paid for their maintenance in the hospital, and left the amount he said was due them for wages, but that he had not paid any extra wages as the act for the protection of seamen directs, to provide for their passage home. This certificate does not state in terms, nor any thing that will admit of the construction, that these seamen were left with the consent of the consul; on the contrary, the necessary conclusion to be drawn from it is, that he did not consent. For the master had not complied with what the law required of him. By the third section of the act already referred to, it is provided among other things, that, when any seaman, or mariner, a citizen of the United States, shall, with his own consent, be discharged in a foreign country, it is made the duty of the master to produce to the consul, vice consul, commercial agent, or vice commercial agent, the certified list of his ship's company, and pay to the consul, &c. for every seaman so discharged, being designated on said list as a citizen of the United States, three months' pay over and above the wages then due. The case shows that these seamen were American citizens, and the master offered to prove, that they were left in the hospital at Lisbon by their own request, which must be taken as equivalent to a consent to be discharged in a foreign country. If all this had been shown to the consul, and three months' wages advanced, he would no doubt have certified his consent to their being left at Lisbon, and the case would then have been brought within the act. That the consul would have given the requisite certificate, is fairly to be inferred, from the parol evidence offered on the part of the defendants, that the consul verbally expressed his satisfaction at the course pursued by the master in relation to these seamen. The law has very wisely placed American seamen in foreign countries, under the protection and guardianship of some of our public agents, to guard against their being left destitute and in want. It is very probable these seamen were left at Lisbon by their consent; but the requisite evidence to establish that fact was not produced. It required the sanction of the consent of a public agent, and that signified in writing and under his official seal. This being the evidence required by the statute, the parol evidence, both as to the consent of the seamen and the satisfaction of the consul, was not admissible to establish the fact.

4. The next and more difficult inquiry relates to the question of damages. In the case of Taylor v. Sandford (in the supreme court of the United States), 7 Wheat. [20 U. S.] 17, the chief justice in delivering the opinion of the court observes, that "in general a sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty, the legal operation of which is to cover the damages, which the party in whose favour the stipulation is made may have sustained, from the breach of contract by the opposite party." It will not be considered, of course, as liquidated damages, and it will be incumbent on the party who claims them as such, to show they were so considered by the contracting parties, and considerable stress is laid upon the circumstance in that case, that the gross sum named is called by the parties a penalty. Taking the general rule to be as here stated, the proposition admits that the inquiry in every case must be in a great measure a question of intention, and whatever right is attached to the circumstance that the gross sum is called a penalty, does not apply to this case. The act does not call it a penalty. It directs a bond to be taken in the sum of four hundred dollars, and then goes on to point out the duty imposed on the master, to secure the performance of which the bond is intended. The act does not expressly declare that the bond shall be forfeited if he fails to perform the duty. But this is a necessary inference; and the proviso points out what shall save the forfeiture, although the master does not, in point of fact, comply with the stipulation. I consider, therefore,

the construction to be given to this section of the act, the same as if it had expressly declared that if the master did not comply with the duties therein required, he should forfeit the sum of four hundred dollars. And the reason why a bond is to be given is, that security is required; and there must be some way in which the security shall signify his assent to the undertaking.

It may, I think, be laid down as a general rule, admitted in all the cases on this subject, that where, from the nature of the case, damages cannot be ascertained, the gross sum agreed upon between the parties, must be understood as stipulated damages. If actual damages must be proved in cases arising under this section of the act, the law is a dead letter, for there is no rule by which they can be ascertained. Questions of national policy were undoubtedly taken into view in the passage of this law. It was wise and prudent to guard against our seamen being left in a foreign country. Our national strength is intimately concerned in the question; and by what rule can a jury estimate damages on this account? It is too limited and narrow a view to take of this provision in the law, that it was intended to indemnify the United States against payment of the passages of seamen on their return to this country, or for whatever assistance should be afforded them in a foreign country. Higher and more important considerations, in a national point of view, dictated the policy of this provision. This is evident from other provisions in the act. The United States could be under no obligations to provide for the return of our seamen who voluntarily quit the vessel and remained in a foreign country; yet masters of vessels are not even in such case permitted to discharge them without paying to the consul or commercial agent, for each seaman, three months' wages, over and above what may thus be due; and two thirds of this advance is to be paid to the seamen, upon their engagement on board a vessel to return to the United tates. This is held out as a premium to induce their return, and not as a mere indemnity for the expenses of a passage. If the bond is only to indemnify for actual damages sustained, when does the right of action accrue? The master returns to the United States. having left his whole crew in a foreign country, and without being furnished with the documents or evidence required by the act to save the forfeiture of the bond. If actual damages must be shown, no suit can be brought until the United States are damnified by payment of passage money, or for some other expenses. Such never could have been the policy or intention of the law; and the alternative must necessarily follow, that a non-compliance by the master with his engagements, works a forfeiture of his bond, and subjects him to the payment of four hundred dollars.

The judgment of the district court must therefore be affirmed.