## Case No. 16,001.

UNITED STATES v. PARSONS et al.

[4 Cranch, C. C. 726.] [1]

Circuit Court, District of Columbia. March Term, 1836.

LARCENY — INDICTMENT — OWNERSHIP OF GOODS.

If the goods stolen be charged as the goods of A. B., and if upon evidence, it appears that A. B. was a feme covert, and that the goods were the property of her husband, the court will not instruct the jury to find the prisoners not guilty, if the husband be absent, and not contributing to her support, and she keeping house by herself.

Joseph Parsons, John Callihan, and William Drane were indicted for stealing the goods of Ann Bell. It appeared upon the trial that Ann Bell's husband was temporarily absent seeking employment as a printer elsewhere, and did not contribute to her support; and that she kept house in Washington.

W. L. Brent, for defendant, prayed the court to instruct the jury that if they should be satisfied, by the evidence, that Ann Bell was a feme covert, and that the goods stolen were the property of her husband, they should find the prisoners not guilty upon this indictment.

But THE COURT (CRANCH, Chief Judge, contra), refused to give the instruction.

Verdict, "Guilty."

## Case No. 16,002.

UNITED STATES v. PARSONS et al.

[1 Lowell, 107.] [2]

District Court, D. Massachusetts. Sept., 1866.

SEAMEN—BOND FOR RETURN OF CREW—ACTION—LOSS OF CONSUL'S CERTIFICATE—EVIDENCE OF CONTENTS.

1. A shipmaster, who is sued on his bond for the safe return of his crew, may give parol evidence of the contents of a consul's certificate, authorizing the discharge of one of the men, on satisfactory proof that such a paper was once in existence and has been lost.

2. Notwithstanding the very sweeping language of section 3 of Act Feb. 28, 1803 [2 Stat. 203], and section 8 of Act July 20, 1840 [5 Stat. 395], requiring masters of American vessels to give bond for the return of all the crew, unless discharged in a foreign country with consent of a consul, &c., yet these sections, construed with the aid of the other parts of those statutes, cannot be held to require a master to return to the United States foreign seamen shipped at their own home, for a particular cruise, ending where it began, and discharged there, according to the terms of their contract, though without the consent of a consul.

3. The consent of a consul could not be rightly withheld in such a case, and there is no law requiring it to be asked.

4. Whether the bond is intended to be given for seamen, even if shipped in the United

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

States, who by the terms of their engagement are entitled to be discharged abroad, quære?

Debt on a bond given by the master of the ship William & Henry, as required by the act of Feb. 28, 1803, § 1 (2 Stat. 203), for the return to the United States of the company of the ship. The ship sailed from New Bedford, in 1860, on a whaling voyage to and in the Pacific Ocean, in the course of which the defendant William C. Parsons was deprived of his command by the owners, and came home, and the vessel was brought back by another master, who failed to produce to the boarding-officer five of the original crew, and five persons, not shown to be citizens of the United States and not shipping as such, who had shipped at Tombas, in Peru, for a whaling cruise which by its terms ended at Tombas, where they were discharged in accordance with their contract. As to none of these persons was there any consular certificate. By consent of parties the case was submitted to the court, without a jury. There was evidence that of the crew shipped at New Bedford, three had deserted, one had died, and one had been discharged by Captain Parsons, with the consent of the consul, to whom the three months' extra wages had been paid, and a fee for his certificate.

W. A. Field, Asst. U. S. Dist. Atty.
E. L. Barney, for defendants.

LOWELL, District Judge. This master had no opportunity to comply with the literal tenor of his bond by exhibiting his crew to the boarding-officer, nor his consular certificates or satisfactory evidence of the death and desertion of certain of the men to the collector of New Bedford, because he was not permitted to bring the ship home, but came before the ship arrived, and without any of her papers. I cannot say that he is exonerated from his obligation under the bond by his discharge abroad, so far as his own acts or neglects are concerned; but he may now produce the evidence, which, if he had remained on board the ship, he should have given to the revenue officers. So far as four of the men shipped at home are concerned, the evidence is satisfactory that one died and three deserted. For the fifth he should have a consular certificate, and it has been held, that no other evidence of the consul's consent is admissible. U. S. v. Hatch [Case No. 15,325]. But the case here is, that such a certificate was paid for and promised, and, I may well presume, it was given. No case has decided that the contents of a lost certificate cannot be proved by parol; it is the consul's consent which cannot be so proved; and as Captain Parsons has not had the custody of the papers, and his successor may not have had his attention called to this man's discharge, it is not improbable that the papers may have been mislaid in the consul's office or on board ship.

The persons who were shipped for an intermediate off-shore cruise, and were discharged when their time was out, seem to be within the letter of the statutes of 1803, § 1 (2 Stat. 203), and of 1840, § 8 (5 Stat. 395); which require a bond to be given for the return of all the crew, including those shipped in a foreign port. And yet, it can hardly have been the intent of congress that foreigners, shipped in their own country, for a distinct voyage or part of a voyage, ending where it began, should be brought to the United States, unless some consul should consent to their discharge. Certainly, no consul would have any right to dissent in a case of that kind, and I know of no possible advantage which would accrue to such seamen by being discharged before a consul. Undoubtedly, such men are American seamen, within the protection of our laws, and can call on the consul to redress their grievances. Matthews v. Offley [Case No. 9,290]. But supposing them to have no cause of complaint, I do not know that they are deemed incapable of settling their own affairs with the master. The act of 1840, § 9 (5 Stat. 395), authorizes a consul to discharge any mariner who shall complain to him that the voyage is continued contrary to his agreement, or that he has fulfilled his contract; and if upon the face of the articles the consul finds the complaint to be well founded, he shall then require an advance of three months' pay, as provided by the act of 1803, unless he shall be satisfied that the contract has expired or the voyage been protracted by circumstances beyond the control of the master, and without any design on his part to violate the articles of shipment, in which case he may discharge the mariner without requiring the three months' additional pay. This statute seems to imply that, where the contract has expired, it is the first duty of the master to discharge the man, and that it is only when he fails to do so that the consul is to be applied to, and then the fact that the man has not already been discharged is prima facie evidence against the master on the question of additional pay.

It has never been decided that the bond must be given for seamen who, by the very terms of their contract, are to be discharged abroad. Such agreements may be rare, and may have been overlooked. The act of April 14, 1792, § 8 (1 Stat. 256), required the master of an American ship, which was sold in a foreign port, to send his crew back to the state where they entered on board, "unless the crew are liable by their contract, or do consent to be discharged" at the foreign port. The act of 1803 (section 3), provides for paying the consul three months' extra pay, for each man, when a ship shall be sold in a foreign country, and her company discharged, or when a seaman or mariner, a citizen of the United States, shall, with his own consent, be discharged in a foreign country. This act is silent concerning seamen who by their contract are liable to be discharged in a foreign

country, though they are mentioned in the act of 1840, already cited. The words of the bond and of the statute establishing it, are more extensive, requiring the master to bring home all seamen who have not died, &c., or been discharged with the consent of a consul. Taking the whole law together, it seems reasonable to understand it as meaning that all those shall be brought home, who by their contract are entitled to be brought home, unless, &c. I cannot readily believe that the intent of the law is, that men who have freely, and for reasons satisfactory to themselves, agreed on a month's voyage, to end abroad, are to be paid three months' wages, and that the United States is to be paid for still another month, unless the consul shall remit it. And until 1840 the consul had no power to remit. It may be argued, that the policy of the legislature is to discourage the discharge of our seamen in foreign countries, and to guard the United States against the expenses of their support.

However this may be with citizens, or those who appear as such on the crew list, foreigners shipping abroad as such, and domiciled there, are never entitled to the extra pay, and the United States are not liable for their support; and there is no reason, as I have said, why the consul should be formally applied to to ratify their necessary discharge, unless they choose to invoke his power on account of some failure by the master to carry out the contract. Notwithstanding the very sweeping language of the statutes concerning the bond, I hold that it does not require the master to return to this country foreigners who ship in their own home for an intermediate cruise, which ends where it began; or if it does, that the condition is satisfied by their discharge at their home, in compliance with the very terms of their engagement, though without the consent of a consul. Such being the case here, there must be judgment for the defendants.