See same case in district court, 8 FED. REP. 172.

---

CASE OF THE CHINESE CABIN WAITER.

*In re* 'AH SING.

(*Circuit Court, D. California.* August 27, 1882.)

**1. CHINESE LABORERS—PROHIBITION—ACT OF CONGRESS CONSTRUED.**

The prohibition of the act of congress upon any master of a vessel bringing into the United States any Chinese laborer from any foreign port or place, means, from bringing any Chinese laborer embarking at a foreign port or place, and does not apply to the bringing of a laborer already on board of the vessel when it touches at a foreign port.

**2. SAME—TEMPORARY ABSENCE—RIGHT TO RETURN.**

The object of the prohibitory act of congress was to prevent the further immigration of Chinese laborers to the United States, not to expel those already here. It even provides for the return of such laborers, leaving for a temporary period, upon their obtaining certificates of identification.

**3. AMERICAN VESSEL—PART OF UNITED STATES TERRITORY.**

A person shipping on an American vessel as one of the crew is within the jurisdiction of the United States. An American vessel is deemed a part of the territory of the state within which its home port is situated and as such a part of the territory of the United States.

On *Habeas Corpus.*

*Philip Teare,* Dist. Atty.

*McAllister & Bergin,* for petitioner.

*Milton Andros,* for captain.

Before FIELD, Justice, and SAWYER, C. J.

FIELD, Justice. The act of congress of May 6, 1882, "to execute certain treaty stipulations relating to Chinese," declares in its first section that after the expiration of 90 days from its passage, and for the period of 10 years, "the coming of Chinese laborers to the United States" is suspended, and that during such suspension "it shall not be lawful for any laborer to come, or having so come after the expiration of said 90 days, to remain within the United States."

Its second section enacts:

"That the master of any vessel who shall knowingly bring within the United States on such vessel, and land or permit to be landed, any Chinese laborer *from any foreign port or place,* shall be deemed guilty of a misde-

meanor, and, on conviction thereof, shall be punished by a fine of not more than $500 for each and every such Chinese laborer so brought, and also be imprisoned for a term not exceeding one year."

The third section declares that these provisions shall not apply to Chinese laborers who were in the United States on the seventeenth of November, 1880, or who shall have come before the expiration of 90 days from the passage of the act, and who shall produce to the master of the vessel and the collector of the port certain prescribed certificates of identification, containing the name, age, occupation, last place of business, and physical marks or peculiarities of the laborer.

Section 8 requires the master of a vessel arriving from any foreign port or place, at the time he delivers a manifest of the cargo or reports the entry of his vessel, to deliver to the collector of the district a separate list of all Chinese passengers *"taken on board his vessel at any foreign port or place,* and all such passengers on board the vessel at that time."

Other sections contain various provisions to secure the enforcement and prevent the evasion of the clauses prohibiting the immigration of Chinese laborers; but they are not material to the disposition of the question presented on this application.

The petitioner is a subject of the emperor of China, and alleges that he came to California six years ago, and has since resided in the state; that for some months past he has been employed as a seaman on board the steam-ship City of Sydney, which departed from the port of San Francisco on the eighth of May last, bound on a voyage to Australia, and returned to this port on the eighth of this month; that since its return the captain has refused to allow him to land, and detains him on board, in contravention of the constitution of the United States, and of the treaty between this country and China.

The captain of the steam-ship returns that he detains the petitioner on board of his vessel, and refuses to allow him to land, by reason of the prohibitory and punitive provisions of the act of congress which we have cited. He also sets forth all the facts connected with the employment of the petitioner, stating that he shipped on board of the steam-ship at the port of San Francisco on the fifth of May last as a cabin waiter; that the vessel is employed in carrying the mails of the United States and of certain foreign powers, as well as passengers and merchandise, between the port of San Francisco and the ports of Sydney, in New South Wales, of Auckland, in New Zealand, and Honolulu, in the Hawaiian Islands; that he signed shipping articles binding himself to go as one of the crew on a voyage from San

Francisco to Sydney and back, and went on board of the vessel in pursuance of the contract; that the vessel departed from this port on the eighth of May last, arrived at Sydney on the fourth of June, left Sydney on the thirteenth of July, and arrived at San Francisco on the eighth of this month, having touched at thé ports of Auckland, in New Zealand, and Honolulu, in the Hawaiian Islands, the petitioner being all the time on board in his capacity as cabin waiter under his contract.

The question presented is whether the petitioner is within the class of laborers whose landing in the United States is prohibited by the act of congress. The 90 days after its passage expired on the fourth of August. The captain of the vessel is desirous of obeying the law, and is not actuated by any personal feeling in restraining the petitioner. He is also under this embarassment: he is bound by his contract to return the petitioner to the port of shipment, and this implies that he shall land him. The detention, if unlawful, renders him liable to both civil and criminal prosecution. He therefore asks the direction of the court as to his duty; and, with the consent of his counsel, the district attorney has been heard in support of his action.

We do not, however, find any difficulty in arriving at the meaning of the act. Its provisions are plain. The master of a vessel is prohibited from bringing within the United States, and landing or permitting to be landed, any Chinese laborer *from any foreign port or place;* and that means, from bringing any Chinese laborer embarking at a foreign port or place. The prohibition does not apply to the bringing of a laborer already on board of the vessel when it touches at a foreign port. When we speak of merchandise as brought from a foreign port, the port of shipment is always understood, and not any intermediate port at which the vessel bringing the goods may have stopped. This is the common understanding of the terms by merchants, and is the interpretation given to them by the courts. They must be held to have the same meaning when used with reference to the importation of persons from a foreign port, as when used with reference to the importation of goods. The eighth section of the act confirms this view, if it needed any confirmation; that requires the master of the vessel to deliver a list of Chinese passengers *"taken on board* his vessel at any foreign port or place." It is the laborers thus taken on board that the master is prohibited from bringing into the United States.

Any other construction would compel a master of an American vessel, leaving a port of the United States with a Chinese seamen or

waiter, to send him adrift at a foreign port at which the vessel might touch, and prohibit the master from bringing him back in accordance with the bond which he is required by existing law to execute. Rev. St. § 4576.

The object of the act of congress was to prevent the further immigration of Chinese laborers to the United States, not to expel those already here. It even provides for the return of such laborers leaving for a temporary period, upon their obtaining certificates of identification. It was deemed wise policy to prevent the coming among us of a class of persons who, by their dissimilarity of manners, habits, religion, and physical characteristics cannot assimilate with our people, but must forever remain a distinct race, creating by their presence enmities and conflicts, disturbing to the peace and injurious to the interests of the country. But it was not thought that the few thousands now here, scattered, as they must soon be, throughout all the states, would sensibly disturb our peace or affect our civilization.

And in this connection it should not be overlooked that the petitioner, while on board the steamship as one of its crew, was within the jurisdiction of the United States, at all times under their protection, and amenable to their laws. An American vessel is deemed to be a part of the territory of the state within which its home port is situated, and as such a part of the territory of the United States. The rights of its crew are measured by the laws of its state or nation, and their contracts are enforced by its tribunals. *Crapo* v. *Kelly*, 16 Wall. 610. A foreign jurisdiction, even for offenses committed by her crew on board of her in a foreign port, except where the offense is against the law of nations, does not attach unless the acts affect the peace of the port, or persons disconnected from the vessel. 8 Op. Atty. Gen. 73. It would be, therefore, a singular circumstance in the legislation of the country if the act of congress had been so framed that a subject of China, by his temporary employment on an American vessel sailing from an American port, was deprived of the right of residence acquired under the treaty with his country. Only the clearest language would justify such a conclusion. Nothing in the act requires it. Whenever the United States intend to eject any person from their jurisdiction they will undoubtedly express their purpose in plain terms.

The district attorney urges against the construction we give that it will open the door to evasions of the law, contending that it will be impossible to prevent Chinese in a foreign port from taking the place

of those shipped here, unless certificates of identification, mentioned in the act, be exacted from them. The answer to this position is, that for importing other laborers by such evasions, equally as for importing prohibited laborers without any attempt to substitute them for others, the law has provided a penalty; and it would be impossible for the master violating the law to escape detection and punishment. Independently of this consideration, the law touching the shipment of crews requires that a list of the men shall be furnished to the collector by the master of every vessel, which shall contain substantially the same particulars of description of every one, which the act of congress exacts in the certificate of identification of the Chinese laborer, who may wish to return to the country. But if the act of congress were defective, as we do not think it is, in providing the necessary means of identifying Chinese laborers shipping as seamen, the defect would not change the plain meaning of the sections cited.

We are of opinion that the petitioner is not within the prohibition of the act of congress, and that his restraint by the captain of the steamship is unlawful. He must therefore be discharged.

Ordered accordingly.

NOTE. The bond required by this section does not embrace the case of a vessel sold in a foreign port, and which does not return to the United States. *Montell* v. *U. S.* Taney, 24. The act applies only to a case of voluntary sale, and not a sale rendered necessary by misfortune. *The Dawn*, 2 Ware, 121. Nor does it apply to cases where the seaman is lawfully separated from the vessel, or is separated from her without fault of the master or owner. *Montell* v. *U. S.* Taney, 24. It applies to those cases only where the vessel returns to the United States; to cases where the seamen continue subject to the lawful authority of the master, and where it is in his power to bring them home. Id. Whether the bond is intended to be given for seamen, even if shipped in the United States, who by the terms of their engagement are entitled to be discharged abroad, *quære*. *U. S.* v. *Parsons*, 1 Low. 107. The statute must be construed with the aid of its other parts, and it cannot be held to require the master to return to the United States foreign seamen shipped at their own home for a particular cruise, the voyage ending where it began, and discharging there according to the terms of their contract, though without the consent of the consul. *U. S.* v. *Parsons*, 1 Low. 107. Seamen discharged from an American vessel in a foreign port may bring an action in admiralty against her owner to recover their portion of the three-months' wages required to be paid by act of congress, (*Dustin* v. *Murray*, 5 Ben. 10;) and it is immaterial what were the terms of the agreement signed by them, or whether the discharge was at the termination of their agreement or before its termination. (*Tingle* v. *Tucker*, Abb. Adm. 519;) nor is it material who are the particular owners of the vessel, provided she is owned by citizens of the United States,

(*U. S.* v. *Harwood*, 3 Sumn. 14.)   But an action can be maintained by a seaman discharged in a foreign port with his own consent, (*Ogden* v. *Cox*, 12 Johns. 143;) but the certificate of the consul, to excuse the master, states that he was left in the foreign port with his consent.   *U. S.* v. *Barstow*, 1 Paine, 336.   A shipmaster sued on his bond may give parol evidence of a consul's certificate authorizing the discharge of one of his crew, on satisfactory proof that such paper was once in existence and has been lost.   *U. S.* v. *Parsons*, 1 Low. 107. Where a master by deceit or collusion procures the discharge of a seaman at a foreign port, he can claim no benefit or immunity under it.   *Tingle* v. *Tucker*, Abb. Adm. 519.   He cannot discharge seamen abroad unless the vessel is condemned or sold or wrecked.   *Burke* v. *Buttman*, 1 Low. 191.   Where the voyage is broken up without necessity on a foreign voyage, and seamen are discharged without payment of the three-months' wages, the court will, on a libel of the seamen, compel the owner to pay such wages,—two-thirds to the seamen and one-third for the use of the United States.   *Pool* v. *Welch*, Gilp. 193. The seamen are entitled, on a voyage broken up in a foreign country, to wages till their return, and are not bound to work their way back as seamen on the vessel belonging to the same owner.   *Burke* v. *Buttman*, 1 Low. 19.   In the absence of a contract the master is under an implied contract to return the seamen to the port of shipment.   *Worth* v. *The Lioness No.* 2, 2 McCrary, 208. It may be doubted whether the intention of congress was to require or permit the payment to be made elsewhere than to the consul at the place of discharge.   *Pool* v. *Welch*, Gilp. 193.   Generally, when the performance of a contract has become impossible by a fortuitous event, the parties are discharged from its obligations.   *The Dawn*, 2 Ware, 121.—[ED.